FILED

2016 MAR 21  AM 11: 56

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO**

**COUNTY OF MAHONING THOMAS D. LAMBROS FEDERAL BUILDING**

| | |
|---|---|
| Jamila Yasmine Bey (Executor) Ex Relatione KARLA DENISE SELDON In Propria Persona | ) Case No. 4: 16 CV 0693 |
| | ) AFFADAVIT FOR  JUDGE PEARSON |
| | ) MAG. JUDGE BURKE |
| vs. | ) 1.    DEFAULT OF ESTOPPEL BY |
| JOHN REMONDI acting as CHIEF EXECUTIVE | )           ACQUIESCENCE |
| OFFICER (CEO) & DIRECTOR, SOMSAK | )           (Affidavit of fact Notice of Default |
| CHIVAVIBUL acting as CHIEF FINANCIAL | )           Judgment) |
| OFFICER (CFO) for Navient Solutions, Inc. | ) 2.    COMPLAINT FOR INTENT TO |
| (formerly known as Sallie Mae, Inc.), | )           DEFRAUD; |
| subsidiaries of SLM Corporation, | ) 3.    FRAUD IN THE FACTUM; |
| respectively, and herein collectively | ) 4.    UNLAWFUL DEMAND FOR |
| referred to as Sallie Mae, et. al, 123 Justison | )           MONEY -ARTICLE 1 SECTION |
| Street, Suite 300 WILMINGTON, DE 19801; | )           10; |
| RAYMOND J. QUINLAN acting as CHAIRMAN | ) 5.    VIOLATIONS OF |
| AND (CEO), STEVEN J. MCGARRY acting as | )            (OHIO CORRUPT PRACTICES |
| (EVP), (CFO)  for  the Sallie Mae et. al., 300 | )           ACT ("OCPA"), R.C. 2923.31, ET |
| Continental Drive, Newark, Delaware. 19713 | )           SEQ.) & the "Organized Crime |
| | )           Control Act of 1970," 84 Stat. 941, |
| **Defendants.** | )           18 U.S.C. 1961(1)(B), (1)(C), (1)(D), |
| | )           and (1)(E) (RICO); |
| | ) 5.    RECISSION. |
| ———————————————————— | 7.    DEMAND FOR JURY TRIAL |

0

**COMPLAINT**

1
2
3
4   COMES NOW the Plaintiff, Jamila Yasmine Bey ex Relatione KARLA DENISE SELDON
5   ("Plaintiff"). Plaintiff sue Defendants as named above, jointly and individually for Fraud,
6   Violations of the Ohio Corrupt Practices Act ("OCPA"), R.C. 2923.31, et seq. &   the
7   "Organized Crime Control Act of 1970," 84 Stat. 941, 18 U.S.C. 1961(1)(B), (1)(C), (1)(D),
8   and (1)(E), unfair and deceptive practices related to student loans in violation of Section 5 of
9   the Federal Trade Commission Act (Section 5) and for other relief and demand trial by jury,
10  and state:                **I. Jurisdiction, Venue, and Parties**
11  **A. Jurisdiction and Venue**
12  **1.** This is an action for damages which does not exceed the jurisdictional limit of this Court and
13  damages are recoverable under the claims set forth herein including the Ohio Corrupt Practices
14  Act ("OCPA"), R.C. 2923.31, et seq., and the "Organized Crime Control Act of 1970," 84 Stat.
15  941, 18 U.S.C. 1961(1)(B), (1)(C), (1)(D), and (1)(E) and for which damages have been
16  suffered by the Plaintiff due from the actions and conduct of the Defendants as set forth
17  hereinbelow; for temporary and permanent injunctive relief in Ohio State; and for other relief,
18  and for trial by jury of all issues so triable as a matter of right.
19  **2. Jurisdiction** of this action is proper in this Court as Defendants conduct regular and
20  continuous business within the State of Ohio, but OHIO DOS search results confirmed that
21  SALLIE MAE BANK, SALLIE MAE, INC, SLM FUNDING, LLC and SLM STUDENT
22  LOAN TRUST 2012-6 lack the required registration and licenses to conduct business in the
23  state of OHIO, see exhibit *D(A)* .
24  **3. Venue** of this action is proper in this Court as applicable Ohio law provides that if venue is
25  proper as to any one Defendant in multi-Defendant litigation that venue is proper as to all
26  Defendants, and as venue is proper as to Defendants **JOHN REMONDI acting as CHIEF**
27  **EXECUTIVE OFFICER (CEO) & DIRECTOR, SOMSAK CHIVAVIBUL acting as CHIEF FINANCIAL**
28  **OFFICER (CFO) for Navient Solutions, Inc. (formerly known as Sallie Mae, Inc.),**
    **subsidiaries of SLM Corporation, respectively, and herein collectively referred to as**
    **Sallie Mae, et. al, 123 Justison Street, Suite 300 WILMINGTON, DE 19801; RAYMOND J. QUINLAN**
    **acting as CHAIRMAN AND (CEO), STEVEN J. MCGARRY acting as (EVP), (CFO)  for  the Sallie**

**Mae et. al., 300 Continental Drive, Newark, Delaware.**

## II. The Parties

Plaintiff Jamila Yasmine Bey ex Relatione KARLA DENISE SELDON is domiciled at Mahoning County, Ohio State who is over the age of eighteen (18). Defendants, JOHN REMONDI acting as CHIEF EXECUTIVE OFFICER (CEO) & DIRECTOR, SOMSAK CHIVAVIBUL acting as CHIEF FINANCIAL OFFICER (CFO) for Navient Solutions, Inc. (formerly known as Sallie Mae, Inc.), subsidiaries of SLM Corporation, respectively, and herein collectively referred to as Sallie Mae, et. al, 123 Justison Street, Suite 300 WILMINGTON, DE 19801; RAYMOND J. QUINLAN acting as CHAIRMAN AND (CEO), STEVEN J. MCGARRY acting as (EVP), (CFO) for the Sallie Mae et. al., 300 Continental Drive, Newark, Delaware. et al:  (herein referred to as "SALLIE MAE et. al, NAVIENT et. al" or **Defendants**) all parties Plaintiff is informed and believes, and thereon alleges played a part in the fraud of the Plaintiff's alleged debt/loan that was fraudulently treated as though it was securitized (as a Security/Trust Certificate), which was all kept from the Plaintiff therefore establishing the lender-borrower relationship between the borrower and the investors/lender. Evidence will show that the "Securitization" was circumvented because the defendants not only claim the Plaintiff owes for this alleged debt/Loan they on paper made it look as though they placed the Plaintiff's so-called promissory note that was changed into a security into a trust and paid out disbursements for loan numbers 1-07 through 1-13 one year after Plaintiff graduated and this was over a year passed the closing cutoff date and the borrowers alleged debt/loan had the appearance of origination after the closing cutoff date of the school loan trust and most of the language in the PSA prohibits the pool from acquiring defaulted assets and loans originated after the cutoff date. This is a matter of independent right of the pooling and servicing agreement is in question, being that the Plaintiff is not a third party beneficiary of that agreement it is felt that the court should enforce that agreement; Plaintiff is informed and believes, and thereon alleges that the Promissory Note a legal instrument (common law contract in nature) is not enforceable as it does not meet certain legal conditions: 1) The contract was only signed by the Plaintiff, but not the defendants and both parties must sign or it creates a linear contract; 2) An offer and acceptance of the offer, the type and amount of payment for the services or goods rendered and shaped around the amount of money or capital loaned and terms of repayment of the promissory note,  all the terms and conditions associated with the agreement have not been established between the two parties, the details of the total amount of money or capital loaned, the interest rate too be charged, and the timeline for repayment,

including but not limited to other hidden proceeds that the Plaintiff may have been entitled to was breached when the Defendants placed the Plaintiff's Promissory note into a Security Pool to trade on the Stock Market without her knowledge; 3) the Student Loan borrower may have an adverse claim to any proceeds made by the Trust from the unauthorized use of the Student Loan borrower Receivables, as the Trust may be liable for certain violations of consumer protection laws that apply to the Receivables, either as assignee from the Depositor(s) with respect to obligations arising before transfer of the Receivables to the Trust or as the party directly responsible for obligations arising after the transfer. Because none or some of these conditions were not met, disclosed nor addressed in the promissory note details, the promissory note does not meet all the elements of a legally binding contract and is evidence of unjust enrichment and fraud on the part of the Defendants as the evidence will show. The alleged debt/loan was not fully disclosed and as such is a violation of The *Truth In Lending Act* 15 *U.S.C.* §1601, *Privacy Act* Title 5 *U.S.C.* § 552(b)(4), and Title 12 *U.S.C.* § 2605 and therefore, makes ANY waiver of my ability to dispute a foreclosure void. *See:* D. H. Overmyer Co. Inc., of Ohio Et al., v. Frick Co., 405 U.S. 174 (1972).

In addition, an Account holder (Student Loan borrower) may be entitled to assert such violations by way of set-off against the obligation to pay the amount of receivables owing. (See UCC 8-102(a)(1), 8-102(a)(9), 8-105, and 8-302(2)).

## **ALLEGATIONS**

Plaintiff is informed and believes, and thereon alleges that the Defendants are in Default of estoppel by acquiescence. Plaintiff served upon the Defendants several times an Affidavit of Default to establish presumed facts concerning their failure to produce competent evidence that she ever waived her fundamental Right to due process of law, as protected by the PEACE AND FRIENDSHIP TREATY OF MOROCCO 1787, and ratified to: THE PEACE TREATY OF MOROCCO 1836 Art. VI, XX, and XXI as well as and conjoined together, the Constitution for the United States of American, as lawfully amended (hereinafter "U.S. Constitution"). The Peace Treaty of Morocco 1836 and the U.S. Constitution are contracts that are one and both are the supreme Law of this land, the Moroccan Empire. The United States for America and the Constitution for the United States pursuant to Article VI, Clause 2 illustrates this fact. The constitution of this Estate/State, Ohio also recognizes that the Constitution for the United States is the supreme Law of this Land.  In 2012, 2013, 2014, 2015 and Plaintiff presented to the

**COMPLAINT**

Defendants formal written Notices and Demands for production of any and all material evidence, currently in their possession or control, of any knowing, intentional, and voluntary waiver(s) by her of fundamental Right to due process of law as well as produce the other points in their entirety. As stated in her previous written communications to the Defendants, waivers of fundamental Rights must be knowingly, intentional, and voluntary acts, done with sufficient awareness of the relevant circumstances and likely consequences. See U.S. v. Brady, 397 U.S. 742 at 748 (1970); U.S. v. O'Dell, 160 F. 2d 304 (6th Cir. 1947). The said various types of Notices and Demand Affidavits gave the Defendants reasonable notice and grace to locate and produce the requisite evidence of any such waivers and all points within the Affidavit of Fact "Writ In The Nature of Discovery", "Fiduciary Request Reconveyance", "Cease and Desist Demand", Student Loan Analysis Report by a Certified Forensic Loan Auditor, Termination of Contract due to Fraudulent linear signed Promissory note, Affidavit of Notary Presentment, and Affidavit of Fact Notice of Default Judgment. Deadline for production of each said evidence was always 30 days or less. Defendants have served absolutely nothing upon Plaintiff which could be considered as a good faith and diligent attempt to respond to the Plaintiff's lawful and reasonable Request within the stated deadline for each served affidavit etc. Accordingly, Plaintiff invoked the doctrine of estoppel by acquiescence, entitled, "Affidavit of Fact Notice of Default Judgment," because she can prove that the Defendants' previous fiduciary contract with her imposes upon the Defendants a legal and a moral duty to answer, and their silence can now be construed as a fraud. "Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading." See U.S. v. Tweel, 550 F.2d 297, 299 (1977) emphasis added, quoting U.S. v. Prudden, 424 F. 2d 1021, 1032 (1970). See also Carmine v. Bowen, 64 A. 932 (1906).

## 1.  COUNT I:  DEFAULT OF ESTOPPEL BY ACQUIESCENCE
### (Notice of Default  Judgment)

Plaintiff is informed and believes, and thereon alleges that the Defendants are in default for their failure to respond over countless requests to produce the contract in its entirety. Defendants under the Straw of the 14th Amendment ENS LEGIS did circumvent all requests. Defendants misrepresented and misclassified the Plaintiff by stating that she was a Sovereign Citizen which is absolutely a misrepresentation and an oxymoron term and this was done in order to carry out color-of-law actions and injury by misclassification after clarifying that

1  sovereign title in order to justify hurting the Plaintiff and carrying out Article 1 for their Klan
2  activities as they were trying to also harm by using slanderous and defamatory remarks on her
3  character in their correspondences to the Plaintiff. Plaintiff presented as a national on the land
4  an "Affidavit of Fact Notice of Default Judgement" along with copies of documentation of
5  requests asking the Defendants to prove the debt was served on the Defendants via certified
6  mail and Registered mail. **The Points requested of the Defendants are as follows:** Number
7  (1) Produce the Originals or Certified and Verified Official Copies of the Original Loan-
8  Related Documents (including all related papers, electronic communications and E-mails, etc.,)
9  as stipulated by Law. Number (2) To schedule a timely and transparent Meeting establishing an
10  opportunity for the Plaintiff, her Consul, and/or her CPA to make a thorough Physical
11  Inspection of the Loan-related Documents, and all other related instruments, so as to enable the
12  Plaintiff and her Consul, or CPA to physically Examine; to Verify; to Confirm; and to Witness
13  the same instruments; and to Rebut any mistakes or misrepresentations; to compare Plaintiff's
14  records, facts and information; and to correct the same for the Public Record to make sure that
15  the Promissory Note was not transferred off the books. Defendants have not been transparent
16  and failed to provide evidence, Number (3) Plaintiff requested Defendants and their Assigns for
17  the Record to produce the following Records, Information and Documents as initially noted and
18  related to the alleged Loan in their alleged claim, bearing the Account Number **9905173769-1,**
19  **et al**; and any future related Case Number known and unknown, which are in controversy—all
20  inter-dependent, inter-related documents, and all associated Instruments attached thereto;
21  covering all the associated Files and Notes and Instruments constructed from the initiation of
22  the alleged Loan up and unto the present day; and reflecting all related and accumulated
23  documents, notes and data: **A.** Disclose and Produce the Original Promissory Note (being
24  Lawful, legible and verifiable proof of evidence (exposing the front and the back) and marked
25  with the Account Number, **9905173769-1, et al**, with the clear signatures of the Lender(s) and
26  all the evidence associated with the Original Loan, indicating the exchange of Substance or
27  Specie alleged to have been issued from the Defendants,  ( including "NAVIENT") and given
28  to the alleged Borrower Jamila Yasmine Bey ex Relatione KARLA D SELDON  ( hereby
known interchangeably as either alleged Borrower and or Plaintiff). **B.** TO PRODUCE ANY
AND ALL 'Allonge' or Riders; any 'Bills of Exchange'; and any other 'Promissory Note(s)
(exposing the front(s) and the back(s) complete with any "Affixations' or 'Allocations'

1    attached to, or associated with, the Borrower's 'Original Promissory Note' and used for
2    'Endorsements'. **C.** To produce and disclose all Bookkeeping Journal Entries associated with
3    the alleged Loan given to the Plaintiff, Jamila Yasmine Bey Ex Relatione KARLA D
4    SELDON. Including all the complete names, the addresses, and the locations, and the business
5    contacts of all the acting Trustee(s), Feoffers and/or the affirmed Surety Holders. **D.** Produce,
6    disclose and reveal the 'Promissory Note' associated with the Original Loan and to reveal and
7    disclose all other Notes related in any other way to the Borrower Jamila Yasmine Bey Ex
8    Relatione KARLA D SELDON. **E.** Produce Evidence of the Insurance Policy that was
9    constructed, associated with, or put in place on, or against, the Borrower/Plaintiff's 'Promissory
10   Note' and associated with the Loan bearing the Account Number **9905173769-1, et al**.
11   **F.** Produce all call reports and any other related 'Notes' or instruments made or constructed for
12   the entire period covering the Loan.  **G.** Produce the documented evidence of the original
13   'Deposit Slip' issued for the Deposit of the Borrower's "Promissory Note" and associated with
14   the Loan. **H.** Produce the Original Order authorizing the withdrawal of Funds from the
15   Borrower's 'Promissory Note' Deposit Account. **I.** Produce the Account Number and the
16   Source from which the money came to 'Fund' the original 'Check' given to the 'Borrower'. **J.**
17   Produce Verification evidence, and proof that the Borrower's Promissory Note was a **Gift** to
18   the **Lender** from the **Borrower**; and that the same was disclosed to the borrower Jamila
19   Yasmine Bey Ex Relatione KARLA D SELDON. **K.** Produce the full and complete Name(s)
20   and the Address(s) of the current Holder(s) of the Borrower's Promissory Note associated with
21   the alleged Loan.   **L.** Produce full and complete Name(s) and the Address(s) of the Lender's
22   CPA and Auditor or any other Holder or Record-Keeper for the entire period covering the
23   Execution of the Mortgage or Loan. The Writ that was served is a <u>Lawful Demand and Request</u>
24   and was issued under the 'Rules of Discovery' and forwarded to the Defendants and all
25   aforementioned Defendants, The <u>Writ In The Nature of Discovery</u> stands as Firm and Lawful
26   Evidence of the alleged Borrower exercising her due process rights to Request, Discovery and
27   Disclosure; and establishes *For The Record* the Plaintiff's <u>Honorable and Good Faith</u> attempt
28   to clear up any flawed entries; any insensate misrepresentations; or any other mis-prints,
     mistakes, frauds, or confusion concerning her intent to make clear, unvarnished, and corrective
     resolutions in this Loan or Default matter. The request must be satisfied before accepting any
     vague assumptions; any other misrepresentations; any secondary contracts; and before the

claimants taking any further actions. Due to the Defendant's acquiescence, the questions of fraud now stand as truth. The Defendants whole or in part did with willful Non-Disclosure and Default in this matter after several attempts to receive all requested specific evidence materially and expediently return the same Request, Discovery and Disclosure (as presented) and with all twelve (12) points or issues fully answered within the allotted twenty (20) days of Receipt of the same. Because of the Defendants' failure to answer the many requests of "Writ in the Nature of Request Discovery", "Fiduciary Request Reconveyance"; QWR, and the other aforementioned debt validation requests, these defendants have acquiesced for failure to respond within the allotted time as stated earlier. (see Exhibit A). Therefore, the Plaintiff filed a complaint with the Consumer Financial Protection Bureau, after exhausting all other remedies including sending the Defendants an **"Affidavit of Fact-Notice of Default Judgement"** as well as filing this Affidavit/Complaint in Federal Court /Article III Court Venue that upholds the Constitution for the United States Republic. Any unforeseen or deceptive acts; misrepresentations; diversions; deceitful redirections; or any incomplete or non-answered Response to the questions presented to the Representatives, Holders or Trustees, etc., will be considered an affirmation of secrete, disguise, and disingenuous intent (RICO). Any avoidance of truth shall be considered an "inducement to Fraud'; and the said 'Failure of Response' on the part of Representatives, Trustees, Feoffers, or Assigns, neglecting their responsibilities to answer every one (and all of the specific twelve (12) above-noted Loan—points) shall constitute a violation of Trust, a breach Trust, and tacit acquiescence, established from the record by non-compliance. *(See Exhibit A)* This fraudulent act makes the linear contract null and void ab initio. The same dispensations shall be published for the public Record. The Defendants were also given the Motu Proprio Apostolic Letter and Clearfield Doctrine.

WHEREFORE, Plaintiff prays for rescission of the stated loan in its entirety.

2. Plaintiff is informed and believes, and thereon alleges that the Defendants received proceeds from the appearance of a Security Instrument and did so without disclosing this information to the Plaintiff. This RICO fraud is further proof that there is no loan/debt obligation as it moved from the definition of an alleged debt/loan to the definition of a Security Instrument which is an express violation of law under (Title UCC Article 8 § 8-102 (1)(2)(3)(4)(5) and 12 U.S.C. 1831 n which mandates Securities) violations of the GAAP, SEC and the IRS.

**3**. Plaintiff is further informed and believes, and thereon alleges that Defendants lack the required registration and licenses to conduct business in the state of OHIO. Without the proper registration with the Secretary of State, the foregoing entities would be barred from instituting any forthcoming legal proceedings against the subject (Plaintiff) Student Loan borrower.

**4.** Defendant(s) are acting as Trustee(s) for the securitized trust. Plaintiff is informed and believes, and thereon alleges that, Defendants SALLIE MAE/NAVIENT doing business in the County of MAHONING, State of OHIO are not the originators of the trust and can't claim ownership of the Promissory Note/contract as it no longer exist due to fraud when the Defendants changed it from a debt/loan Promissory note into the title, **"Security SLM STUDENT LOAN TRUST 2012-6"**. The only party that is in a position to come before the court and stake a claim on the plaintiff's alleged loan is the Stock Market. SALLIEMAE/NAVIENT has No standing to default; Defendants are merely Servicers over a Security not over a debt/Loan as described in this AFFADAVIT.

### III. FRAUD IN THE FACTUM

**5.** Defendants failed to respond to requests/demands of the following: 1) A Qualified Written Requests, 2) Writs in the Nature of Discovery and Disclosure, 3) Fiduciary Request Reconveyance(s), (over three times in the course of four years), 4) Affidavit of Notary Presentment in order to prove the debt and determine if the bank complied with Section 5 of the FTC Act which prohibits Unfair or Deceptive Acts or Practices, 5) Debt Collector Disclosure Statement, 6) Promissory Note Affidavit, and 7) Forensic Audit and Bloomberg Report correspondence discussing the fraud and lack of full disclosure that was perpetrated upon the Plaintiff by Defendants under *The Truth In Lending Act* 15 *U.S.C.* §1601, *Privacy Act* Title 5 *U.S.C.* § 552(b)(4), and Title 12 *U.S.C.* § 2605 the requirement of a lender to respond and act to a borrower's request for disclosure and information regarding a purported debt. Plaintiff did not receive the point by point items as requested—served upon the Defendants via Registered mail, Certified Mail, Certificate of Mailing through Notary Presentment(s), Certificate of Mailing (United States Postal Service), see Exhibit(s) *A,B,C,D,E,F, G, I*      , after exhausted all administrative Remedies, Plaintiff served  the Defendants with  "Affidavit of Fact-Notice of Default Judgement(s)." (See Exhibits) If the Defendants are claiming to be the originator/holders of the Promissory Note that has not been transferred into a Trust, they have refused to show proof and Plaintiff now

**COMPLAINT**

1   request Discovery to force the Defendants to show proof to support their claims. Defendants

2   must rebut with proof the following: 1) the Promissory Note has not been securitized (turned

3   into a Security Bond; 2) That the loan truly exist; 3) The loan has not been placed into a Trust

4   and 4) The alleged loan was not bundled with other student loan borrowers and traded on the

5   Stock Market. **6.** Plaintiff is further informed and believes, and thereon alleges that the truth of

6   the matter is that SALLIE MAE BANK is the originator of the alleged loan/debt as further

7   described in Exhibit___D___. NAVIENT is the latest in this chain of violators who have

8   defrauded the Plaintiff in this case. SALLIE MAE BANK, DEUTSCHE BANK TRUST

9   COMPANY DELAWARE (SEC) and DEUTSCHE BANK TRUST COMPANY AMERICAS

10  (Bloomberg) are named as the Delaware Trustee and Indenture Trustee, respectively **Class**

11  **A1, Class A2, Class A3** and **Class B** securities were assigned CUSIP numbers: **78447GAA9,**

12  **78447GAB7, 78447GAC5 and 78447GAD3,** which is a 9-character alphanumeric code

13  identifying any North American security for the purpose of facilitating clearance and

14  settlement of trades. Moreover the collateral for these securities are the Student Loan

15  Receivables. Plaintiff was totally unaware of this process or that her loan was turned into a

16  Security from the Defendants alleged Student Loan Receivables as it pertains to her and hers

17  alone where the Private securitized loans were co-signed by  whose credit has also been

18  affected by this fraud.

19  **7.** Plaintiff is further informed and believes, and thereon alleges that a servicer can only exist if

20  there's a Trust. An asset-backed security Trust by its very definition must have a Servicer. If a

21  Servicer exists, then a Security and a TRUST must exist as they go hand-in-hand.  Defendants

22  continually ignored Plaintiff's request for years to disprove the aforementioned claims and

23  acquiesced by default see Exhibit___C___. As hereinabove mentioned, the Plaintiff had no

24  other recourse but to serve the Defendants with an "Affidavit of Facts-Notice of Default

25  Judgement." According to FASB 125 Securitization Accounting, once SALLIE MAE BANK

26  removed the asset and expended/ transferred it to remove all risks, they became the Transferor

27  and it is therefore considered a sale:

28  **A transfer of financial assets in which the transferor surrenders control over those assets**
**is accounted for as a sale to the extent that consideration other than beneficial interests in**
**the transferred assets is received in exchange. The transferor has surrendered control**
**over transferred assets if and only if all of the following conditions are met:**

*a. The transferred assets have been isolated from the transferor—put presumptively beyond the reach of the transferor and its creditors, even in bankruptcy or other receivership.*

*b. Either (1) each transferee obtains the right—free of conditions that constrain it from taking advantage of that right—to pledge or exchange the transferred assets or (2) the transferee is a qualifying special-purpose entity and the holders of beneficial interests in that entity have the right—free of conditions that constrain them from taking advantage of that right—to pledge or exchange those interests.*

*c. The transferor does not maintain effective control over the transferred assets through (1) an agreement that both entitles and obligates the transferor to repurchase or redeem them before their maturity or (2) an agreement that entitles the transferor to repurchase or redeem transferred assets that are not readily obtainable.*

According to FAS133 of the FASB, SALLIE MAE BANK should have kept the Plaintiff's Promissory Note on their Balance Sheet instead of expending it to a Trust and turning it into a Security. *FAS 133, is an accounting standard issued in June 1998 by the Financial Accounting Standards Board (FASB) that requires companies to measure all assets and liabilities on their Balance Sheet.*

*22.) Cash inflows from operating activities are: a. Cash receipts from sales of goods or services, including receipts from collection or sale of accounts and both short- and long-term notes receivable from customers arising from those sales b. Cash receipts from returns on loans, other debt instruments of other entities, and equity securities—interest and dividends.*

**8.** It is the practice of SALLIE MAE BANK and other companies alike to insure the loans/debts of their customers for at least two and a half times the amount of the loan and would stand to collect if and when the loans/debts default. Because SALLIE MAE BANK filed bankruptcy it is unclear as to how or if, FDIC collected the insurance on behalf of SALLIE MAE BANK as their receiver because the Plaintiff was denied the ability verify the debt/loan. Plaintiff's alleged debt/loan receivables but one of the Defendants stands to collect or has collected the funds from their Insurer by claiming that the Plaintiff either defaulted on the alleged debt/loan or has failed to pay on the alleged debt/loan and most or all of the debt/loans were charged off, see credit report exhibits *1 & 2*. The Defendants threatened to place the Plaintiff ENS LEGIS' "KARLA D SELDON" into default status after the Plaintiff first placed Defendants into a Default status due to acquiescence. The Plaintiff's only regress was to bring this matter before the Federal court in front of a Jury of their peers to expose the fraud of the Defendants attempting to receive unjust enrichment in the following ways from the following source: Sallie Mae/Navient's 10-K Fiscal Year Ended December 31, 2014: **1)** Charge-offs are

**COMPLAINT**

1  Insured against the United States for losses on their receivables (noted on page 96 and 97 of

2  their balance sheet); **1a)** FFELP Loans are insured as to their principal and accrued interest in

3  the event of default subject to a Risk Sharing level based on the date of loan disbursement.

4  These insurance obligations are supported by contractual rights against the United States. **1b)**

5  For loans disbursed after October 1, 1993, and before July 1, 2006, [they] (hereon referred to as

6  SallieMae/NAVIENT) receive 98 percent reimbursement on all qualifying default claims. **1c)**

7  For loans disbursed on or after July 1, 2006, [they] receive 97 percent reimbursement. **1d)** For

8  loans disbursed prior to October 1, 1993, [they] receive 100 percent reimbursement. **2)** Navient

9  has federally guaranteed (FFELP) and private education loans which means they are able to write-off

10  any losses **2a)** Taxes Exhibit _3_ shows that Stockholders would or have recouped off of the

11  Plaintiff's alleged loan/debt now called a "Security SLM STUDENT LOAN TRUST 2012-6",

12  as shown on page 10 of "SUBJECT TO COMPLETION DATED MARCH 27, 2014-

13  INFORMATION STATEMENT NAVIENT CORPORATION", "All of the issued and

14  outstanding shares of Navient common stock will be distributed to stockholders in a manner

15  that is intended to be tax-free in the United States, on the basis of one share of Navient

16  common stock for each outstanding share of SLM Corporation common stock;" **2b)** "Subject

17  of Completion page 10 Continued**", "**Prior to the distribution, SLM Corporation will undergo

18  an internal corporate reorganization in which (i) a new holding company, which is referred to

19  herein as SLM BankCo, will become the publicly-traded successor to the existing SLM

20  Corporation, which is referred to herein as Existing SLM, pursuant to a holding company

21  merger in which the outstanding shares of Existing SLM common stock will be converted, on a

22  1-to-1 basis, into shares of SLM BankCo common stock and (ii) Existing SLM will become a

23  subsidiary of Navient and retain directly or indirectly the assets and liabilities associated with

24  Existing SLM's businesses other than the consumer banking business. Existing SLM's

25  liabilities include its unsecured public debt which, as of December 31, 2013, aggregated $18.3

26  billion. SLM BankCo will take the name SLM Corporation and will hold and continue to

27  operate the consumer banking business under the Sallie Mae brand." and then Defendants go

28  further to state the following, **"Neither the U.S. Securities and Exchange Commission nor

   any state securities commission has approved or disapproved these securities or

   determined if this information statement is truthful or complete. Any representation to

   the contrary is a criminal offense."** Plaintiff feels that these statements are clearly made to

1    cover up the fraud. **2c)** It was incumbent upon NAVIENT the purported original lending
2    institution, successor in ownership and/or loan servicer, hereafter, referred to as Defendants
3    under the Truth In Lending Act 15 U.S.C. § 1601, Privacy Act Title 5 U.S.C. §552(b)(4), and
4    Title 12 U.S.C. §2605 must explain their and the Plaintiff's lawful position regarding the
5    purported loan/debt (herein referred to as a security). Plaintiff is further informed and believe
6    that because the Defendants refused to stipulate that the loan originator and/or NAVIENT by
7    successor in ownership, or the corporation for whom it purports to be the owner of the
8    Plaintiff's alleged Promissory Note (Security), and NAVIENT as the servicer of the purported
9    loan/debt is not the Creditor of the "Original School Loan," successor in ownership, and/or loan
10   servicer, as the Defendants clearly admitted and stated in Exhibit _4_____ page 31 of the
11   **Subject of Completion**: "Legislation passed by Congress in 2010 prohibits new loan
12   originations under the FFELP program, and, as a result, interest income on the existing FFELP
13   Loan portfolio and fee-based revenue from servicing FFELP Loans will decline over time.
14   Navient may not be able to develop revenue streams to replace the declining revenue from
15   FFELP loans." Plaintiff believes that this is further proof that Navient never risked any assets,
16   nor are any of their officers holding any assets, nor are they the injured party in this case.
17   **9**. Plaintiff states that the Defendants failed to provide the Plaintiff with requested proof of
18   filing of the following tax forms and other items: 1040, 1040-A, 1040-V, 1099-OID; 1099-INT
19   and W-9, Indemnity Bond, Provider(s) and Contact number(s), and their EIN # (which Plaintiff
20   was able to obtain through the SEC filings at SEC filings @ EDGAR. Online). Defendants'
21   also ignored Plaintiff's request under the Truth In Lending Act 15 U.S.C. § 1601, Privacy Act
22   Title 5 U.S.C. §552(b)(4), and Title 12 U.S.C. §2605 to inform them, the I.R.S. and the S.E.C.
23   of NAVIENT and those they purport to service the loan for as to the Defendants and the status
24   of the party they service the loan for of either being a Creditor and/or not being a Creditor.
25   These are acts of fraud upon the Plaintiffs, the public in general, and are the single cause of this
26   unacceptable and senseless dilemma and absent NAVIENT stating the claim as Creditor or
27   "true" representative of the Creditor they cannot claim a debt or collection of the alleged
28   debt/loan.
     **10**. Plaintiff is informed and believes, and thereon alleges that Defendants have altered,
     destroyed, and/or mutilated the GENUINE ORIGINAL form FR 2046 balance sheets, Form
     2049 balance Sheets,  2099s balance sheets, *inclusive of the correct OMB number*, and ONLY

1  have OLD COPIES and NO CERTIFIED COPIES evidencing the current condition of the
2  GENUINE ORIGINAL form FR 2046 balance sheets, Form 2049 balance Sheets, 2099s
3  balance sheets, *inclusive of the correct OMB number*; and form FR 2049 balance sheets, Form
4  2049 balance Sheets, 2099s balance sheets, inclusive of correct OMB number, and only have
5  OLD COPIES and NO CERTIFIED COPIES evidencing the current condition of the
6  GENUINE ORIGINAL  form FR 2049 balance sheets, Form 2049 balance Sheets, 2099s
7  balance sheets inclusive of the correct OMB number which they are required to file with the
8  Federal Reserve Board (FRB) quarterly or weekly under 12 U.S.C. §§248 and 347, showing the
9  assets and liabilities (liability being the Plaintiff's Promissory note) that the Defendants use in
10 the accounting.  The public has a right to disclosure under the Privacy Act those reports filed on
11 the Original OMB forms. This goes beyond the Truth In Lending protections regarding the
12 private loans and now protected under the Consumer Financial Protection Bureau (CFPB) that
13 was removed from the five consumer protection regulations for student loan holders, it is fraud
14 and there is no statute of limitations on fraud. The request to examine the books to see if
15 NAVIENT shifted the assets off the books was never provided, but NAVIENT has to report to
16 the Federal Reserve Board (FRB) where it went, so NAVIENT and the FRB can follow it.
17 Defendants are mandated to give cash receipt on any deposit and have failed to provide
18 Plaintiff any cash receipt.
19 **11.** Plaintiff is informed and believes that the deposit of their promissory note was made to a
20 demand deposit account and Defendants are required to show it on their books, but they are not
21 doing that.  They are doing an offset entry. Plaintiff will subpoena the auditor if necessary to
22 prove same because the Defendants acquiesced on the request to see if they singularly and/or
23 collectively violated provisions of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1640,
24 1666 and 1681, by wrongfully, improperly and illegally reported negative information as to
25 them to one or more Credit Reporting Agencies, resulting in having negative information on
26 their ENS LEGIS', "KARLA D SELDON" credit report and the lowering of its Fair Isaac
27 Corporation (FICO) score. Plaintiff disputed any alleged debt/loan and demanded Defendants
28 change any and all negative information reported to Credit Reporting Agencies and they did not
do so therefore violating the Truth In Lending Act 15 U.S.C. §1601, Privacy Act Title 5 U.S.C.
§ 552(b)(4), and Title 12 U.S.C. § 2605. Plaintiff hereby question the authenticity of ALL dates
and/or ALL signatures by ALL parties on ALL documents, including without limitations,

**COMPLAINT**

notarized documents, "contracts," "promissory notes," "titles," affidavits, and/or the like, including without limitations the dates and/or signatures by notary publics, officers, employees, and any and ALL parties attesting to any and ALL claims, facts, accounting, transfers, recordings, publications, and/or the like, etc.

**12.** Plaintiff is informed and believes that Defendants have **No Standing To Default** and the parties asserting a right to default must have an original contract showing all terms of the contract with full disclosure. There is no contract. No loan can be defaulted upon without a contract to back it up: and no contract exists in this case. The original contract was altered, stolen, and there was an addition to the agreement, that would have been proven earlier had the Defendants not acquiesced, whereby the Plaintiff will ask for that validation through Discovery regarding the following items:

*1) The intent of the agreement is that the original party who funded the alleged loan per the bookkeeping entries is to be repaid the money.*
*2) The bank or financial institution involved in the alleged loan will follow GAAP.*
*3) The lender of financial institution involved in the alleged loan will purchase the promissory note from the borrower.*
*4) The borrower does not provide any money, money equivalent, credit, funds or capital or thing of value that a bank or financial institution will use to give value to a check or similar instrument.*
*5) The borrower is to repay the loan in the SAME SPECIE OF MONEY OR CREDIT that the bank or financial institution used to fund the loan per GAAP, thus ending all interest and liens, and*
*6) The written agreement gives full disclosure of all material facts.*

If the Defendants claim item number 1 is false, than they are swindlers. If item 2 is false, than it is illegal. If item 3 and 4 is false, the Defendants invested nothing, it was stolen or they paid nothing for the note, and the Plaintiff funded the loan. If number 5 is false, than the Defendants admit it is only a moneychanger and charged as if there was a loan. If number 6 is false, than they agree that they concealed material facts, therefore plaintiff claims breach of agreement and claims items 1 to 6 are not part of the agreement. Defendants refused to show the original agreement. Plaintiff claims the copy is forged because it leaves out items 1 to 6. It is "FRAUD IN THE FACTUM", for the Defendants to even attempt to claim that the items 1 to 6 are concealed; and if their argument is that the items were left out, then the document would have to be a forged document. Defendants must show the original note if they claim the above items are not part of the agreement, if they only have a copy, then it is the Plaintiff's claim that the

additional part of the agreement is missing with items 1-6. The agreement allows the Plaintiff to repay the alleged loan with a promissory note even though the Defendants stated that the contract demands payment in Federal Reserve notes, therefore proving that the Defendants are nothing but Moneychangers. We ask that the Defendants explain the agreement, the GAAP and who funded the loan. Plaintiff want to know who funded the loan as it changes the cost and risk of the loan as stealing and counterfeiting is still a criminal offense and there is no statute of limitation on fraud.

## COUNT I: COMMON LAW FRAUD

**13.** Plaintiff reaffirms and realleges paragraphs 1 through 12 hereinabove as if set forth more fully hereinbelow. **14.** At all times material hereto, Defendants had actual knowledge that their written statements as to alleged ownership of the Plaintiff's alleged school loan/debt and the legal entitlement to demand monies/species from Plaintiff and institute default proceedings were false statements of material fact which were false when made and known by said Defendants to be false when made the exhibit _D_ will show. **15.** Defendants, made the subject false statements with the specific intent that Plaintiff relies thereon and with the separate specific intent, was unknown to the Plaintiff at the time, to defraud the Plaintiff. **16.** Plaintiff's Representative and executor Jamila Yasmine Bey for ENS LEGIS, KARLA D SELDON, not being in the school lending loan acquisition business, reasonably relied upon the written statements of Defendants and acted thereon, including but not limited to paying in federal reserve notes (which by constitutional law and by its very definition is not money/specie) to said Defendants when demanded thereby until the defendants acquiesced by non-response to Writs and Fiduciary Request Reconveyance(s), leaving the Plaintiff with no regress or opportunity to cure the accusations and threats of Default. **17.** As a direct and proximate result of the actions and course of conduct of Defendants, Plaintiff has suffered damages mentally and emotionally, has been passed over for employment opportunities due to the lowering of the FICO score. **18.** The fraudulent conduct engaged in by the Defendants constitutes a separate and independent tort, separate and apart from any breach of any contract. The deliberate and concerted actions engaged in by the Defendants as set forth above and under the circumstances set forth above constitutes the type of fraud for which Plaintiff demands the assessment of her

filing fees if any against the Defendants. WHEREFORE, Plaintiff demands the entry of Final

Judgment against the Defendants for compensatory damages, interest, costs, fees, and any other

and further relief which is just and proper under the totality of the circumstances.

## COUNT II: CONSPIRACY AND INTENT TO DEFRAUD

**19.** Plaintiff reaffirms and realleges paragraphs 13 through 18 hereinabove as if set forth more

fully hereinbelow. **20.** At all times material hereto, Defendants agreed, between and among

themselves and in combination with each other and various agents identified hereinbelow, as to

each overt act in furtherance of the conspiracy and enterprise, to engage in unlawful actions for

a common purpose, to wit: to perpetrate a fraud upon Plaintiff through fraudulent verbal threats

of default and fraudulent  written threats of default filings whereby the Defendants would

punish the ENS LEGIS TRUST, under fraudulent pretenses, of the Plaintiff's real property at

the expense of the Plaintiff and without compensating the Plaintiff therefore; to unlawfully

convert the Plaintiff's real property via a lien threat, the good name of the ENS LEGIS'

KARLA D SELDON and permanently depriving the Plaintiff thereof; to force Plaintiff to pay

in counterfeit money "Fiat notes/federal reserve notes" as they try to pass this demand for

money off as and to cause all deleterious consequences of the Defendants' actions to be saddled

upon the Plaintiff, which consequences include but are not limited to fear of the loss of

employment, credit, etc.; the incurring of expenses; and the adverse effects of threat, duress and

coercion of default placed on the Plaintiff's credit report has caused bouts of depression.

**COUNT III: UNLAWFUL DEMAND FOR MONEY UNDER ARTICLE 1 SECTION 10**

Plaintiff reaffirms and realleges paragraphs 19 through 20 hereinabove as if set forth more fully

hereinbelow. **21.** At all times material hereto, Plaintiff is informed and believes that Defendants

knew the following law: "No State shall enter into any Treaty, Alliance, or Confederation;

grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but

gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto

Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility."

"No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or

Exports, except what may be absolutely necessary for executing it's inspection Laws: and the

net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the

1   Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and

2   Control of the Congress."

3   "No State shall, without the Consent of Congress, lay any Duty of Tonnage, keep Troops, or

4   Ships of War in time of Peace, enter into any Agreement or Compact with another State, or

5   with a foreign Power, or engage in War, unless actually invaded, or in such imminent Danger

6   as will not admit of delay." Yet Defendants tried to demand Money from Plaintiff when there

7   was only set up methods to discharge debt and because Plaintiff had no money, no steady job

8   and no way to get any money, she could not pay.

9

10   **COUNT IV:VIOLATIONS OF (OHIO CORRUPT PRACTICES ACT ("OCPA"),**

11   **R.C. 2923.31, ET SEQ.)**

12   **22.** Plaintiff reaffirms paragraphs 19 through 20 hereinabove as if set forth more fully

13   hereinbelow. **23.** This is an action for violations of the OHIO CORRUPT PRACTICES ACT

14   ("OCPA"), R.C. 2923.31, ET SEQ.), also known as the Organized Crime Control Act of 1970,"

15   84 Stat. 941, 18 U.S.C. 1961(1)(B), (1)(C), (1)(D), and (1)(E), as amended and Plaintiff asserts

16   claims for relief under 18 U.S.C. §§ 1962(c)-(d), and 1964(c). 18 U.S.C. § 1962 which

17   provides, in pertinent part: (c) It shall be unlawful for any person employed by or associated

18   with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce,

19   to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs

20   through a pattern of racketeering activity or collection of unlawful debt. (d) It shall be unlawful

21   for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this

22   section. 18 U.S.C. § 1926. Section 1964(c) of RICO gives individuals a private right of action

23   with recourse to treble damages and reasonable attorney fees. In order to demonstrate a

24   violation under RICO, a plaintiff must establish the following elements: 1) that there were two

25   or more predicate offenses; 2) that an "enterprise" existed (Section 1962(c) of the Racketeer

26   Influenced and Corrupt Organizations Act provides that "it shall be unlawful for any person

27   employed by or associated with any *enterprise*. . . to conduct . . . such enterprise's affairs

28   through a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c) (1999) (emphasis added)).;

3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4)

that an injury to business or property occurred as a result of the above three factors.

" VanDenBroeck v. Commonpoint Mortgage Co., 210 F.3d 696, 699 (6th Cir. 2000). Further,

17

**COMPLAINT**

1    the United States Supreme Court has held that "in order to be held responsible under the Act, a
2    defendant must have not only participated in the scheme, but must have also participated in the
3    operation or management of the enterprise itself." Id. (citing Reves v. Ernst & Young, 507 U.S.
4    170, 183 (1993)). The plaintiff is informed and believes that she has met at least one of the
5    RICO requirements (1) the predicate act of "racketeering activity"; (2) a "pattern of
6    racketeering activity" and (3) a violation of one or more of the four RICO subsections. 18
7    U.S.C. § 1962(a)-(d)   A "pattern of racketeering" activity is defined to require "at least two
8    acts of racketeering activity, one of which occurred after the effective date of this chapter and
9    the last of which occurred within ten years ... after the commission of a prior act of racketeering
10   activity." 18 U.S.C. § 1961(5). "Racketeering activity" is defined as section 1341 (relating to
11   mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of
12   justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating
13   to obstruction of State or local law enforcement), section 1951 (relating to interference with
14   commerce, robbery, or extortion), section 1952 (relating to racketeering).

15   **24.** Plaintiff is informed and believes that in order to accomplish their objective, Defendants
16   developed and were part of an enterprise, which consisted of the Defendants and their agents
17   including but not limited to various law Firms and "Trustee Sale" companies, which worked
18   together and in concert at the direction of the Defendants for the specific purpose of furthering
19   the pattern of criminal activity set forth herein. One example of their RICO activities includes
20   the following: "The Department of Justice on May 14, 2013 announced the federal
21   government's first lawsuit filed against owners and servicers of student loans for violating the
22   rights of service members eligible for benefits and protections under the Service members Civil
23   Relief Act (SCRA). The United States' complaint alleges that three defendants, collectively
24   known as Sallie Mae, engaged in a nationwide pattern or practice, dating as far back as 2005, of
25   violating the SCRA by failing to provide members of the military the six percent interest rate
26   cap to which they were entitled. The three defendants are Sallie Mae Inc. (now known as
27   Navient Solutions Inc.), violations of the Robocalls, autodialers, and the federal Telephone
28   Consumer Protection Act: 1) placing debt-collection calls without an individual's consent, 2)
     using autodialers, and 3) placing robo-calls each call that violates these restrictions potentially
     subjects the company or individual that is responsible for the call to a $1,500 fine (see
     Exhibits). Plaintiff received these robo-calls and autodialer calls and ignored the cease and

4A - ) ¢ Exhibit J
4E

**COMPLAINT**

desist letter and verbal warning (see Exhibit _H_ ). **25.** Plaintiff is informed and believes that an association-in-fact enterprise under RICO can be proven by showing (1) that the associated persons formed an ongoing organization, formal or informal; (2) that they functioned as a continuing unit; and 3) that the organization was separate from the pattern of racketeering activity in which it engaged. VanDenBroeck, 210 F.3d at 699 (citing Frank v. D'Ambrosi, 4 F.3d 1378, 1386 (6th Cir. 1993). There is "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle vs. United States. There must be "an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than ad hoc, basis." United States v. Tocco, 200 F.3d 401, 425 (6th Cir. 2000). Defendants didn't simply conspire to commit a fraud they are an organized functioning racketeering organization that committed telecommunication fraud under Title 29 Ch. 2913 § 2913.05 (A)(B)(C) when they committed the following verbal and written threats: Continued phone harassment and there's nothing I can do as quoted by one agent on the phone, robocalls around 7:30 am, threats to and did ruin/crush credit with all three credit bureau before any default occurred, threatened to sue in court without qualifying the debt, threatening to garnish wages, threatened to keep income tax returns, threatened to Levy bank account, and threatened to lien private allodial property among other violations which was an attempt to extort Federal Reserve Notes without qualifying proof of debt.

## COUNT VI: <u>RECISSION</u>

**26.** Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

**27.** Plaintiff is entitled to rescind the loan and all accompanying loan documents for all of the foregoing reasons: 1) TILA Violations; 2) Failure to provide a Promissory Note/Contract Loan Origination Agreement upon request; 3) Fraudulent Concealment; 4) Fraudulent Inducement; 5) failure to abide by the PSA; 6) making illegal or fraudulent transfers of the note; and 7) Public Policy Grounds, each of which provides independent grounds for relief. 8) Attempt to Defraud - violation of the (HEOA) the Higher Education Act (HEA) that reauthorized and established new institution-based disclosure requirements • HEOA

1  amended Truth in Lending Act (TILA) and established private education loan disclosures •
2  HEOA amended both HEA and TILA to prohibit certain education lending practices ; 8)
3  Fraud in Factum; 9) RICO.  (See Exhibit I)

4  **28.** The Truth In Lending Act, 15 U.S.C §1601, et. seq. extends Plaintiff's right to rescind a
5  loan to three years from the date of closing if the borrower received false or incomplete
6  disclosures of either the loans terms or Borrower's right to rescind.  Here, Defendants have
7  failed to properly disclose the details of the alleged loan. Specifically, the initial disclosures
8  do not initial TILA disclosures, and lack of diligence and collusion on the part of the
9  broker, lender and underwriter to place Plaintiff in a loan she could not afford and would
10  ultimately benefit Defendants following the negative amortization that accrued.

11  **29.** As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not
12  yet ascertained, to be proven at trial.

13  Recoupment to Plaintiff is requested under the GAAP and Generally Accepted Auditing
14  Standards (GAAS) and the FASB Regulations: FAS125 Securitization Accounting; FAS140
15  Offsetting of Financial Assets and Liabilities; FAS133 Derivatives on hedge accounts and
16  FAS95. **30.** Affidavit of Fact -Notice of Default Judgment due to Acquiescence.

17
18
19  ### **DEMAND FOR JURY TRIAL**

20  Plaintiff demands trial by jury of all matters so triable as a matter of right pursuant to OCPA.
21  R.C. 2923.31 and Organized Crime Control Act of 1970," 84 Stat. 941, 18 U.S.C. 1961(1) (B),
22  (1)(C), (1)(D), and (1)(E). Dated this 27th day of February, 2016. Please direct all responses to
23  this Complaint to the Allodial Estate, Moorish Aboriginal Indigenous Trust address below. c/o
24  Jamila Yasmine Bey, via 2620 Stocker Avenue. Youngstown Territory, Ohio Republic Zip
25  Exempt [44505] Tel: (330) 259-6050 (number not to be used by Defendants to continue to
26  harass any longer, in anyway).

27
28  Dated: 3/18/16

Jamila Yasmine Bey, Responsible Party for

ENS LEGIS: SELDON, KARLA D.

Plaintiff In Propria Persona Sui Juris

**U.C.C.1-207/1-308;U.C.C 1-103.6 All Rights Reserved**

20

**COMPLAINT**