FILED

2016 APR 13  AM 2: 35

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO

COUNTY OF MAHONING THOMAS D. LAMBROS FEDERAL BUILDING

| | |
|---|---|
| In Propria Persona | AMENDED COMPLAINT 4:16 CV 0693 Judge Pearson Mag. Judge Burke |

Jamila Yasmine Bey (Executor) Ex Relatione KARLA DENISE SELDON

Plaintiff,

vs.

JOHN REMONDI acting as CHIEF EXECUTIVE OFFICER (CEO) for Navient Solutions, Inc. (formerly known as Sallie Mae, Inc.), subsidiaries of SLM Corporation, respectively, and herein collectively referred to as Sallie Mae, et. al, 123 Justison Street, Suite 300 WILMINGTON, DE 19801; RAYMOND J. QUINLAN acting as CHAIRMAN AND (CEO), for the Sallie Mae et. al., 300 Continental Drive, Newark, Delaware.

Defendants.

) Case No. _____
) AFFADAVIT FOR:
)
) 1.  DEFAULT OF ESTOPPEL BY
)       ACQUIESCENCE
)       (Affidavit of fact Notice of Default
)       Judgment)
) 2.  FRAUD IN THE FACTUM;
) 3.  VIOLATIONS OF
)       (OHIO CORRUPT PRACTICES
)       ACT ("OCPA"), R.C. 2923.31, ET
)       SEQ.) &  the "Organized Crime
)       Control Act of 1970," 84 Stat. 941,
)       18 U.S.C. 1961(1)(B), (1)(C), (1)(D),
)       and (1)(E) (RICO);
) 4.  RECISSION.
) 5.  DEMAND FOR JURY TRIAL
)
)
_____
)
)
)

0

COMPLAINT

1   COMES NOW the Plaintiff, Jamila Yasmine Bey ex Relatione KARLA DENISE SELDON

2   sues Defendants as named above, jointly and individually for Default Of Estoppel By

3   Acquiescence, Fraud in the Factum, Violations of the Ohio Corrupt Practices Act ("OCPA"),

4   R.C. 2923.31, et seq. & the "Organized Crime Control Act of 1970," 84 Stat. 941, 18 U.S.C.

5   1961(1)(B), (1)(C), (1)(D), and (1)(E), unfair and deceptive practices related to student loans in

6   violation of Section 5 of the Federal Trade Commission Act (Section 5) and for other relief and

7   demand trial by jury, and state:

8                              **I. Jurisdiction, Venue, and Parties**

9   **A. Jurisdiction and Venue**

10  **1.** This is an action for damages which does exceed the jurisdictional limit of this Court and

11  damages are recoverable under the claims set forth herein including the Ohio Corrupt Practices

12  Act ("OCPA"), R.C. 2923.31, et seq., and the "Organized Crime Control Act of 1970," 84 Stat.

13  941, 18 U.S.C. 1961(1)(B), (1)(C), (1)(D), and (1)(E) and for which damages have been

14  suffered by the Plaintiff due from the actions and conduct of the Defendants as set forth

15  hereinbelow; for relief in Ohio State; and for other relief, and for trial by jury of all issues so

16  triable as a matter of right.

17  **2. Jurisdiction** of this action is proper in this Court as Defendants conduct regular and

18  continuous business within the State of Ohio, but OHIO DOS search results confirmed that

19  SALLIE MAE BANK, SALLIE MAE, INC, SLM FUNDING, LLC and SLM STUDENT

20  LOAN TRUST 2012-6 lack the required registration and licenses to conduct business in the

21  state of OHIO, see exhibit D(A).

22  **3. Venue** of this action is proper in this Court as applicable Ohio law provides that if venue is

23  proper as to any one Defendant in multi-Defendant litigation that venue is proper as to all

24  Defendants, and venue is proper Defendants **JOHN REMONDI acting as CHIEF EXECUTIVE**

25  **OFFICER (CEO) & DIRECTOR, for Navient Solutions, Inc. (formerly known as Sallie Mae,**

26  **Inc.), subsidiaries of SLM Corporation, respectively, and herein collectively referred to**

27  **as Sallie Mae, et. al, 123 Justison Street, Suite 300 WILMINGTON, DE 19801; RAYMOND J.**

28  **QUINLAN acting as CHAIRMAN AND (CEO) for the Sallie Mae et. al., 300 Continental Drive,**

**Newark, Delaware.**

**COMPLAINT**

## II. The Parties

Plaintiff Jamila Yasmine Bey ex Relatione KARLA DENISE SELDON is domiciled at Mahoning County, Ohio State who is over the age of eighteen (18). Defendants, **JOHN REMONDI acting as CHIEF EXECUTIVE OFFICER (CEO) for Navient Solutions, Inc. (formerly known as Sallie Mae, Inc.), subsidiaries of SLM Corporation, respectively, and herein collectively referred to as Sallie Mae, et. al, 123 Justison Street, Suite 300 WILMINGTON, DE 19801; RAYMOND J. QUINLAN acting as CHAIRMAN AND (CEO), for the Sallie Mae et. al., 300 Continental Drive, Newark, Delaware:** (herein referred to as **"SALLIE MAE et. al, NAVIENT et. al" or Defendants**) all parties Plaintiff is informed and believes, and thereon alleges played a part in the fraud of the Plaintiff's alleged debt/loan making it appear as though it was securitized (as a Security/Trust Certificate). The use of the Plaintiff's Ens Legis (all cap name/trust) was kept from her. Defendant's use of the Plaintiff's signature and name without her permission to create the Trust or appearance of a Trust was a breach of duty. After the Plaintiff sent numerous requests to validate the debt, the only answer she received was a copy of the Promissory note. The defendants did not give the Plaintiff all of the other items she requested. A plaintiff believes, is informed and herein alleges that the Defendants paid investors from a trust that held the Plaintiff and other alleged borrowers promissory notes converted into what appears to be security instruments. Evidence will show that the Defendants placed Plaintiff's alleged loan into what appears to be a "Security Instrument." Defendants continued to demand currency from the Plaintiff even after acquiescing on the validation of the alleged loan. Plaintiff is informed, believes and alleges that the loan/debt is no longer in existence because it was converted into a Trust/Security instrument.

## GENERAL FACTUAL ALLEGATIONS

On March 3, 2013, Plaintiff served the Defendant with a Writ in the Nature of Request Discovery and Disclosure in order to find out if the alleged promissory note was entered into lawfully because it had only one signature; the Plaintiff's. Plaintiff continued to inquire and demand information from the Defendants by sending Affidavits of Fact, several Writs in the Nature of discovery, a Debt Collector Disclosure Statement Request, Fiduciary Reconveyance requests, an Averment of Jurisdiction Quo Warranto, a Response to Fraudulent letter Request, a Non-Response Letter, and three mailings of the Affidavit of Facts Default letters due to their non-response to the Plaintiff' request for full disclosure. Plaintiff is informed, believes, and

COMPLAINT

thereon alleges that the Defendants are in Default of estoppel by acquiescence. Defendants failed their fiduciary duty to send all of the requested point-by-point items to prove debt/loan. Plaintiff presented to the Defendants formal written Notices and Demands for production of any and all material evidence, currently in their possession or control, of any knowing, intentional, and voluntary waiver(s) by the Plaintiff. For any written or verbal proof of Plaintiff waiving her fundamental Right to due process of law. Plaintiff let the Defendants know in her written communications that any waivers of fundamental Rights must be knowingly, intentional, and voluntary acts, done with sufficient awareness of the relevant circumstances and likely consequences. See U.S. v. Brady, 397 U.S. 742 at 748 (1970); U.S. v. O'Dell, 160 F. 2d 304 (6th Cir. 1947). Plaintiff gave the Defendants reasonable notice and grace periods to locate and produce the evidence of any waivers and to answer all the points within the: Affidavit of Fact "Writ In The Nature of Discovery"; "Fiduciary Request Reconveyance"; "Cease and Desist Demand"; Student Loan Analysis Report by a Certified Forensic Loan Auditor; Termination of Contract due to Fraudulent linear signed Promissory note; Affidavit of Notary Presentment; and Affidavit of Fact Notice of Default Judgment. Therefore, the Plaintiff presented to the Defendants a doctrine of estoppel by acquiescence, entitled, "Affidavit of Fact Notice of Default Judgment." Plaintiff believes that the Defendants' previous fiduciary contract with her imposes upon the Defendants a legal and a moral duty to answer. When they did not answer, the Plaintiff saw their silence as fraud. "Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading." See U.S. v. Tweel, 550 F.2d 297, 299 (1977) emphasis added, quoting U.S. v. Prudden, 424 F. 2d 1021, 1032 (1970). See also Carmine v. Bowen, 64 A. 932 (1906).

## 1. COUNT I:  DEFAULT OF ESTOPPEL BY ACQUIESCENCE
### (Notice of Default  Judgment)

Plaintiff is informed and believes, and thereon alleges that the Defendants are in default for their failure to respond over countless requests to produce the contract in its entirety. Defendants under the Straw of the 14th Amendment ENS LEGIS did circumvent all requests. Defendants misrepresented and misclassified the Plaintiff by stating that she was a Sovereign Citizen which is absolutely a misrepresentation and an oxymoron term and this was done in order to carry out color-of-law actions and injury by misclassification after clarifying that

1   sovereign title in order to justify hurting the Plaintiff and carrying out Article 1 for their Klan
2   activities as they were trying to also harm by using slanderous and defamatory remarks on her
3   character in their correspondences to the Plaintiff. Plaintiff presented as a national on the land
4   an "Affidavit of Fact Notice of Default Judgement" along with copies of documentation of
5   requests asking the Defendants to prove the debt was served on the Defendants via certified
6   mail and Registered mail. **The Points requested of the Defendants are as follows:** Number
7   (1) Produce the Originals or Certified and Verified Official Copies of the Original Loan-
8   Related Documents (including all related papers, electronic communications and E-mails, etc.,)
9   as stipulated by Law. Number (2) To schedule a timely and transparent Meeting establishing an
10  opportunity for the Plaintiff, her Consul, and/or her CPA to make a thorough Physical
11  Inspection of the Loan-related Documents, and all other related instruments, so as to enable the
12  Plaintiff and her Consul, or CPA to physically Examine; to Verify; to Confirm; and to Witness
13  the same instruments; and to Rebut any mistakes or misrepresentations; to compare Plaintiff's
14  records, facts and information; and to correct the same for the Public Record to make sure that
15  the Promissory Note was not transferred off the books. Defendants have not been transparent
16  and failed to provide evidence, Number (3) Plaintiff requested Defendants and their Assigns for
17  the Record to produce the following Records, Information and Documents as initially noted and
18  related to the alleged Loan in their alleged claim, bearing the Account Number **9905173769-1,**
19  **et al**; and any future related Case Number known and unknown, which are in controversy—all
20  inter-dependent, inter-related documents, and all associated Instruments attached thereto;
21  covering all the associated Files and Notes and Instruments constructed from the initiation of
22  the alleged Loan up and unto the present day; and reflecting all related and accumulated
23  documents, notes and data: **A.** Disclose and Produce the Original Promissory Note (being
24  Lawful, legible and verifiable proof of evidence (exposing the front and the back) and marked
25  with the Account Number, **9905173769-1, et al**, with the clear signatures of the Lender(s) and
26  all the evidence associated with the Original Loan, indicating the exchange of Substance or
27  Specie alleged to have been issued from the Defendants, ( including "NAVIENT") and given
28  to the alleged Borrower Jamila Yasmine Bey ex Relatione KARLA D SELDON  ( hereby
    known interchangeably as either alleged Borrower and or Plaintiff). **B.** TO PRODUCE ANY
    AND ALL 'Allonge' or Riders; any 'Bills of Exchange'; and any other 'Promissory Note(s)
    (exposing the front(s) and the back(s) complete with any "Affixations' or 'Allocations'

4

**COMPLAINT**

attached to, or associated with, the Borrower's 'Original Promissory Note' and used for 'Endorsements'. **C.** To produce and disclose all Bookkeeping Journal Entries associated with the alleged Loan given to the Plaintiff, Jamila Yasmine Bey Ex Relatione KARLA D SELDON. Including all the complete names, the addresses, and the locations, and the business contacts of all the acting Trustee(s), Feoffers and/or the affirmed Surety Holders. **D.** Produce, disclose and reveal the 'Promissory Note' associated with the Original Loan and to reveal and disclose all other Notes related in any other way to the Borrower Jamila Yasmine Bey Ex Relatione KARLA D SELDON. **E.** Produce Evidence of the Insurance Policy that was constructed, associated with, or put in place on, or against, the Borrower/Plaintiff's 'Promissory Note' and associated with the Loan bearing the Account Number **9905173769-1, et al.**

**F.** Produce all call reports and any other related 'Notes' or instruments made or constructed for the entire period covering the Loan. **G.** Produce the documented evidence of the original 'Deposit Slip' issued for the Deposit of the Borrower's "Promissory Note' and associated with the Loan. **H.** Produce the Original Order authorizing the withdrawal of Funds from the Borrower's 'Promissory Note' Deposit Account. **I.** Produce the Account Number and the Source from which the money came to 'Fund' the original 'Check' given to the 'Borrower'. **J.** Produce Verification evidence, and proof that the Borrower's Promissory Note was a **Gift** to the **Lender** from the **Borrower**; and that the same was disclosed to the borrower Jamila Yasmine Bey Ex Relatione KARLA D SELDON. **K.** Produce the full and complete Name(s) and the Address(s) of the current Holder(s) of the Borrower's Promissory Note associated with the alleged Loan. **L.** Produce full and complete Name(s) and the Address(s) of the Lender's CPA and Auditor or any other Holder or Record-Keeper for the entire period covering the Execution of the Mortgage or Loan. The Writ that was served is a <u>Lawful Demand and Request</u> and was issued under the 'Rules of Discovery' and forwarded to the Defendants and all aforementioned Defendants, The <u>Writ In The Nature of Discovery</u> stands as Firm and Lawful Evidence of the alleged Borrower exercising her due process rights to Request, Discovery and Disclosure; and establishes *For The Record* the Plaintiff's <u>Honorable and Good Faith</u> attempt to clear up any flawed entries; any insensate misrepresentations; or any other mis-prints, mistakes, frauds, or confusion concerning her intent to make clear, unvarnished, and corrective resolutions in this Loan or Default matter. The request must be satisfied before accepting any vague assumptions; any other misrepresentations; any secondary contracts; and before the

1  claimants taking any further actions. Due to the Defendant's acquiescence, the questions of
2  fraud now stand as truth. The Defendants whole or in part did with willful Non-Disclosure and
3  Default in this matter after several attempts to receive all requested specific evidence materially
4  and expediently return the same Request, Discovery and Disclosure (as presented) and with all
5  twelve (12) points or issues fully answered within the allotted twenty (20) days of Receipt of
6  the same. Because of the Defendants' failure to answer the many requests of "Writ in the
7  Nature of Request Discovery", "Fiduciary Request Reconveyance"; QWR, and the other
8  aforementioned debt validation requests, these defendants have acquiesced for failure to
9  respond within the allotted time as stated earlier. (see Exhibit A). Therefore, the Plaintiff filed
10 a complaint with the Consumer Financial Protection Bureau, after exhausting all other remedies
11 including sending the Defendants an **"Affidavit of Fact-Notice of Default Judgement"** as
12 well as filing this Affidavit/Complaint in Federal Court /Article III Court Venue that upholds
13 the Constitution for the United States Republic. Any unforeseen or deceptive acts;
14 misrepresentations; diversions; deceitful redirections; or any incomplete or non-answered
15 Response to the questions presented to the Representatives, Holders or Trustees, etc., will be
16 considered an affirmation of secrete, disguise, and disingenuous intent (RICO). Any avoidance
17 of truth shall be considered an "inducement to Fraud'; and the said 'Failure of Response' on the
18 part of Representatives, Trustees, Feoffers, or Assigns, neglecting their responsibilities to
19 answer every one (and all of the specific twelve (12) above-noted Loan—points) shall
20 constitute a violation of Trust, a breach Trust, and tacit acquiescence, established from the
21 record by non-compliance. This fraudulent act makes the linear contract null and void ab initio.
22 The same dispensations shall be published for the public Record. The Defendants were also
23 given the Motu Proprio Apostolic Letter and Clearfield Doctrine. Defendants failure to
24 respond, as stipulated, and rebut, with particularity, everything in those Affidavits with which
25 he disagreed, is and was his lawful, and binding agreement with and admission to the fact that
26 everything in the Affidavit was true, correct, lawful, and fully binding upon him and his office
27 in any court in America, without his protest or objection or that of those who represent him.
28 The Defendant's silence is and was acquiescence. See: Connally v. General Construction Co.,
   269 U.S. 385, 391. Notification of legal responsibility is "the first essential of due process of
   law". See also: U.S. V. Tweel, 550 F. 2d.297. "Silence can only be equated with fraud where
   there is a legal or moral duty to speak or when an inquiry left unanswered would be

6

**COMPLAINT**

1  intentionally misleading."

2  WHEREFORE, Plaintiff prays for rescission of the stated loan in its entirety.

3  **2.** Plaintiff is informed and believes, and thereon alleges that the Defendants received proceeds

4  from the appearance of a Security Instrument and did so without disclosing this information to

5  the Plaintiff. This RICO fraud is further proof that there is no loan/debt obligation as it moved

6  from the definition of an alleged debt/loan to the definition of a Security Instrument which is an

7  express violation of law under (Title UCC Article 8 § 8-102 (1)(2)(3)(4)(5) and 12 U.S.C. 1831

8  n which mandates Securities) violations of the GAAP, SEC and the IRS.

9  **3.** Plaintiff is further informed and believes, and thereon alleges that Defendants lack the

10  required registration and licenses to conduct business in the state of OHIO. Without the proper

11  registration with the Secretary of State, the foregoing entities would be barred from instituting

12  any forthcoming legal proceedings against the subject (Plaintiff) Student Loan borrower.

13  **4.** Defendant(s) are acting as Trustee(s) for the securitized trust. Plaintiff is informed and

14  believes, and thereon alleges that, Defendants SALLIE MAE/NAVIENT doing business in the

15  County of MAHONING, State of OHIO are not the originators of the trust and can't claim

16  ownership of the Promissory Note/contract as it no longer exist due to fraud when the

17  Defendants changed it from a debt/loan Promissory note into the title, "Security **SLM**

18  **STUDENT LOAN TRUST 2012-6"**. The only party that is in a position to come before the

19  court and stake a claim on the plaintiff's alleged loan is the Stock Market.

20  SALLIEMAE/NAVIENT has No standing to default; Defendants are merely Servicers over a

21  Security not over a debt/Loan as described in this AFFADAVIT.

22  <center>**II. FRAUD IN THE FACTUM**</center>

23  **5.** Defendants failed to respond to requests/demands of the following: 1) A Cover letter of

24  Default Judgement against Navient et.al, **Exhibit C** (January 2016); 2) Writs in the Nature of

25  Discovery and Disclosure, 3) Fiduciary Request Reconveyance(s), 4) Affidavit of Notary

26  Presentment in order to prove the debt and determine if the bank complied with Section 5 of

27  the FTC Act which prohibits Unfair or Deceptive Acts or Practices, 5) Debt Collector

28  Disclosure Statement,  6) Promissory Note Affidavit, and 7) Forensic Audit and Bloomberg

Report correspondence discussing the fraud and lack of full disclosure that was perpetrated

upon the Plaintiff by Defendants under *The Truth In Lending Act* 15 *U.S.C.* §1601, *Privacy*

*Act* Title 5 *U.S.C.* § 552(b)(4), and Title 12 *U.S.C.* § 2605 the requirement of a lender to

<center>7</center>

<center>**COMPLAINT**</center>

1  respond and act to a borrower's request for disclosure and information regarding a purported

2  debt. Plaintiff did not receive the point by point items as requested—served upon the

3  Defendants via Registered mail, Certified Mail, Certificate of Mailing through Notary

4  Presentment(s), Certificate of Mailing (United States Postal Service), see Exhibit(s) Writ In

5  The Nature of Discovery: Exhibits A, A(2014), A1, B1, A3; Fiduciary Request: Exhibit B;

6  Reply to Fraudulent letters from Defendants: Exhibits B2, B3 and C (8/23/13) ; Affidavit of

7  Fact Notice of Default Judgment: Exhibit C (April 16, 2013) Exhibit C (November 21, 2016)

8  Mailed out again in the month of January 2016 (excuse typo that says 2015) to the Defendant;

9  after exhausting all administrative Remedies, Plaintiff served the Defendants with "Affidavit

10  of Fact-Notice of Default Judgement(s)." (See Exhibits C and other exhibits) If the Defendants

11  are claiming to be the originator/holders of the Promissory Note that has not been transferred

12  into a Trust, they have refused to show proof to the Plaintiff. Plaintiff hopes to finally get the

13  answers from the Defendants that she's been requesting during and through discovery.

14  Defendants must rebut with facts and proof the following: 1) the Promissory Note has not been

15  securitized (turned into a Security Bond; 2) That the loan truly exist; 3) The loan has not been

16  placed into a Trust and 4) The alleged loan was not bundled with other student loan borrowers

17  and traded on the Stock Market. **6.** Plaintiff is further informed and believes, and thereon

18  alleges that SALLIE MAE BANK is the originator of the alleged loan/debt as further

19  described in Exhibit D. Plaintiff believes and feels and thereon alleges that NAVIENT is also

20  violating the Plaintiff's rights in this case. SALLIE MAE BANK, DEUTSCHE BANK

21  TRUST COMPANY DELAWARE (SEC) and DEUTSCHE BANK TRUST COMPANY

22  AMERICAS (Bloomberg) are named as the Delaware Trustee and Indenture Trustee,

23  respectively **Class A1, Class A2, Class A3** and **Class B** securities were assigned CUSIP

24  numbers: **78447GAA9, 78447GAB7, 78447GAC5 and 78447GAD3**, which is a 9-character

25  alphanumeric code identifying any North American security for the purpose of facilitating

26  clearance and settlement of trades. Moreover the collateral for these securities are the Student

27  Loan Receivables. Plaintiff was totally unaware of this process or that her loan was turned into

28  a Security from the Defendants alleged Student Loan Receivables as it pertains to her and hers

alone where the Private securitized loans were co-signed by  whose credit has also been

affected by this fraud.

7. Defendants continually ignored Plaintiff's request for years to disprove the aforementioned

**COMPLAINT**

claims and acquiesced by default see <u>Exhibit C</u>. As hereinabove mentioned, the Plaintiff had no other recourse but to serve the Defendants with an "Affidavit of Facts-Notice of Default Judgement." According to FASB 125 Securitization Accounting, once SALLIE MAE BANK removed the asset and expended/ transferred it to remove all risks, they became the Transferor and it is therefore considered a sale:

**A transfer of financial assets in which the transferor surrenders control over those assets is accounted for as a sale to the extent that consideration other than beneficial interests in the transferred assets is received in exchange. The transferor has surrendered control over transferred assets if and only if all of the following conditions are met:**

   *a. The transferred assets have been isolated from the transferor—put presumptively beyond the reach of the transferor and its creditors, even in bankruptcy or other receivership.*

   *b. Either (1) each transferee obtains the right—free of conditions that constrain it from taking advantage of that right—to pledge or exchange the transferred assets or (2) the transferee is a qualifying special-purpose entity and the holders of beneficial interests in that entity have the right—free of conditions that constrain them from taking advantage of that right—to pledge or exchange those interests.*

   *c. The transferor does not maintain effective control over the transferred assets through (1) an agreement that both entitles and obligates the transferor to repurchase or redeem them before their maturity or (2) an agreement that entitles the transferor to repurchase or redeem transferred assets that are not readily obtainable.*

   According to FAS133 of the FASB, SALLIE MAE BANK should have kept the Plaintiff's Promissory Note on their Balance Sheet instead of expending it to a Trust and turning it into a Security. *FAS 133, is an accounting standard issued in June 1998 by the Financial Accounting Standards Board (FASB) that requires companies to measure all assets and liabilities on their Balance Sheet.*

   *22.) Cash inflows from operating activities are: a. Cash receipts from sales of goods or services, including receipts from collection or sale of accounts and both short- and long-term notes receivable from customers arising from those sales b. Cash receipts from returns on loans, other debt instruments of other entities, and equity securities—interest and dividends.*

**8.** Plaintiff wants to know if it is a common practice for SALLIE MAE BANK and other companies alike to insure the loans/debts of their customers for at least two and a half times the amount of the loan. Plaintiff believes that the Defendants attempted to receive unjust enrichment in the following ways from the following source: Sallie Mae/Navient's 10-K Fiscal Year Ended December 31, 2014: **1)** Charge-offs are Insured against the United States for losses

1   on their receivables (noted on page 96 and 97 of their balance sheet); **1a)** FFELP Loans are

2   insured as to their principal and accrued interest in the event of default subject to a Risk

3   Sharing level based on the date of loan disbursement. These insurance obligations are

4   supported by contractual rights against the United States. **1b)** for loans disbursed after

5   October 1, 1993, and before July 1, 2006, [they] (hereon referred to as SallieMae/NAVIENT)

6   receive 98 percent reimbursement on all qualifying default claims. **1c)** for loans disbursed on or

7   after July 1, 2006, [they] receive 97 percent reimbursement. **1d)** for loans disbursed prior to

8   October 1, 1993, [they] receive 100 percent reimbursement. **2)** Navient has federally guaranteed

9   (FFELP) and private education loans which means they are able to write-off any losses  **2a)** Taxes

10  Exhibit 3 shows that Stockholders would or have recouped off of the Plaintiff's alleged

11  loan/debt now called a "Security SLM STUDENT LOAN TRUST 2012-6", as shown on page

12  10 of "SUBJECT TO COMPLETION DATED MARCH 27, 2014-INFORMATION

13  STATEMENT NAVIENT CORPORATION", "All of the issued and outstanding shares of

14  Navient common stock will be distributed to stockholders in a manner that is intended to be

15  tax-free in the United States, on the basis of one share of Navient common stock for each

16  outstanding share of SLM Corporation common stock;" **2b)** "Subject of Completion page 10

17  Continued", "Prior to the distribution, SLM Corporation will undergo an internal corporate

18  reorganization in which (i) a new holding company, which is referred to herein as SLM

19  BankCo, will become the publicly-traded successor to the existing SLM Corporation, which is

20  referred to herein as Existing SLM, pursuant to a holding company merger in which the

21  outstanding shares of Existing SLM common stock will be converted, on a 1-to-1 basis, into

22  shares of SLM BankCo common stock and (ii) Existing SLM will become a subsidiary of

23  Navient and retain directly or indirectly the assets and liabilities associated with Existing

24  SLM's businesses other than the consumer banking business. Existing SLM's liabilities include

25  its unsecured public debt which, as of December 31, 2013, aggregated $18.3 billion. SLM

26  BankCo will take the name SLM Corporation and will hold and continue to operate the

27  consumer banking business under the Sallie Mae brand." and then Defendants go further to

28  state the following, **"Neither the U.S. Securities and Exchange Commission nor any state**
**securities commission has approved or disapproved these securities or determined if this**
**information statement is truthful or complete. Any representation to the contrary is a**
**criminal offense."** Plaintiff feels that these statements are clearly made to cover up the fraud.

**COMPLAINT**

**2c)** It was incumbent upon NAVIENT the purported original lending institution, successor in ownership and/or loan servicer, hereafter, referred to as Defendants under the Truth In Lending Act 15 U.S.C. § 1601, Privacy Act Title 5 U.S.C. §552(b)(4), and Title 12 U.S.C. §2605 must explain their and the Plaintiff's lawful position regarding the purported loan/debt (herein referred to as a security). Plaintiff is further informed and believe that she was unaware of who the loan originator was. Plaintiff needed answers as to whether or not the Defendant purports to be the owner of the Plaintiff's alleged Promissory Note (Security), or the servicer of the purported loan/debt because a servicer is not the Creditor of the "Original School Loan." Plaintiff also needed questions answered as to whether the Defendant is the successor in ownership, and/or loan servicer, because the Defendant's own document clearly states in Exhibit 4, page 31 of the **Subject of Completion**: "Legislation passed by Congress in 2010 prohibits new loan originations under the FFELP program, and, as a result, interest income on the existing FFELP Loan portfolio and fee-based revenue from servicing FFELP Loans will decline over time. Navient may not be able to develop revenue streams to replace the declining revenue from FFELP loans." Plaintiff believes that this is further proof that Navient never risked any assets, their officers are not holding any assets, nor do they have a cause of action in this case due to what appear to be fraudulent actions. Plaintiff needs to know if the alleged loan was charged off or the Security Instrument see credit reports Exhibit 1&2.

**9.** Plaintiff states that the Defendants failed to provide the Plaintiff with requested proof of filing of the following tax forms and other items: 1040, 1040-A, 1040-V, 1099-OID; 1099-INT and W-9, Indemnity Bond, Provider(s) and Contact number(s), and their EIN # (which Plaintiff was able to obtain through the SEC filings at SEC filings @ EDGAR. Online). Defendants' also ignored Plaintiff's request under the Truth In Lending Act 15 U.S.C. § 1601, Privacy Act Title 5 U.S.C. §552(b)(4), and Title 12 U.S.C. §2605 to inform them, the I.R.S. and the S.E.C. of NAVIENT and those they purport to service the loan for as to the Defendants and the status of the party they service the loan for of either being a Creditor and/or not being a Creditor. These are acts of fraud upon the Plaintiffs, the public in general, and are the single cause of this unacceptable and senseless dilemma and absent NAVIENT stating the claim as Creditor or "true" representative of the Creditor they cannot claim a debt or collection of the alleged debt/loan.

**10.** Plaintiff is informed and believes, and thereon alleges that Defendants have altered,

**COMPLAINT**

1    destroyed, and/or mutilated the GENUINE ORIGINAL form FR 2046 balance sheets, Form

2    2049 balance Sheets, 2099s balance sheets, *inclusive of the correct OMB number*, and ONLY

3    have OLD COPIES and NO CERTIFIED COPIES evidencing the current condition of the

4    GENUINE ORIGINAL form FR 2046 balance sheets, Form 2049 balance Sheets, 2099s

5    balance sheets, *inclusive of the correct OMB number*; and form FR 2049 balance sheets, Form

6    2049 balance Sheets, 2099s balance sheets, inclusive of correct OMB number, and only have

7    OLD COPIES and NO CERTIFIED COPIES evidencing the current condition of the

8    GENUINE ORIGINAL  form FR 2049 balance sheets, Form 2049 balance Sheets, 2099s

9    balance sheets inclusive of the correct OMB number which they are required to file with the

10   Federal Reserve Board (FRB) quarterly or weekly under 12 U.S.C. §§248 and 347, showing the

11   assets and liabilities (liability being the Plaintiff's Promissory note) that the Defendants use in

12   the accounting.  The public has a right to disclosure under the Privacy Act those reports filed on

13   the Original OMB forms. These items will be requested for admissions, Production, and

14   interrogatories at the Deposition via Subpoena if necessary. This type of unethical behavior

15   goes beyond the Truth In Lending protections regarding the private loans and the protections of

16   the Consumer Financial Protection Bureau (CFPB) that was removed from the five consumer

17   protection regulations for student loan holders, it is fraud and there is no statute of limitations

18   on fraud. The request to examine the books to see if Defendant shifted the assets off the books

19   was never provided, but the Defendant has to report to the Federal Reserve Board (FRB) where

20   it went, so the Defendant and the FRB can follow it. Defendants are mandated to give cash

21   receipt on any deposit and have failed to provide Plaintiff any cash receipt.

22   **11.** Plaintiff is informed and believes that the deposit of their promissory note was made to a

23   demand deposit account and Defendants are required to show it on their books, but they are not

24   doing that.  They are doing an offset entry. Plaintiff in discovery will attempt to subpoena the

25   auditor to prove facts in this case as the Defendants acquiesced on the request to see if they

26   singularly and/or collectively violated provisions of the Fair Credit Reporting Act (FCRA), 15

27   U.S.C. §1640, 1666 and 1681, by wrongfully, improperly and illegally reported negative

28   information to one or more Credit Reporting Agencies, resulting in having negative

information on their ENS LEGIS', "KARLA D SELDON" credit report and the lowering of its

Fair Isaac Corporation (FICO) score. Plaintiff disputed any alleged debt/loan and demanded

Defendants change any and all negative information reported to Credit Reporting Agencies and

**COMPLAINT**

1   they did not do so therefore violating the Truth In Lending Act 15 U.S.C. §1601, Privacy Act

2   Title 5 U.S.C. § 552(b)(4), and Title 12 U.S.C. § 2605. Plaintiff hereby question the

3   authenticity of ALL dates and/or ALL signatures by ALL parties on ALL documents, including

4   without limitations, notarized documents, "contracts," "promissory notes," "titles," affidavits,

5   and/or the like, including without limitations the dates and/or signatures by notary publics,

6   officers, employees, and any and ALL parties attesting to any and ALL claims, facts,

7   accounting, transfers, recordings, publications, and/or the like, etc.

8   **12.** Plaintiff is informed and believes that Defendants have **No Standing To Default** and the

9   parties asserting a right to default must have an original contract showing all terms of the

10  contract with full disclosure. There is no contract. No loan can be defaulted upon without a

11  contract to back it up: and no contract exists in this case. The original contract was altered,

12  stolen, and there was an addition to the agreement, that would have been proven earlier had the

13  Defendants not acquiesced, whereby the Plaintiff will ask for that validation through Discovery

14  regarding the following items:

15
    *1) The intent of the agreement is that the original party who funded the alleged loan per the*
16  *bookkeeping entries is to be repaid the money.*
    *2) The bank or financial institution involved in the alleged loan will follow GAAP.*
17  *3) The lender of financial institution involved in the alleged loan will purchase the promissory*
18  *note from the borrower.*
    *4) The borrower does not provide any money, money equivalent, credit, funds or capital or*
19  *thing of value that a bank or financial institution will use to give value to a check or similar*
20  *instrument.*
    *5) The borrower is to repay the loan in the SAME SPECIE OF MONEY OR CREDIT that the*
21  *bank or financial institution used to fund the loan per GAAP, thus ending all interest and liens,*
22  *and*
    *6) The written agreement gives full disclosure of all material facts.*
23

24  If the Defendants claim item number 1 is false, than they are swindlers. If item 2 is false, than it

25  is illegal. If item 3 and 4 is false, the Defendants invested nothing, and it was stolen or they

26  paid nothing for the note, and the Plaintiff funded the loan. If number 5 is false, than the

27  Defendants admit it is only a moneychanger and charged as if there was a loan. If number 6 is

28  false, than they agree that they concealed material facts, therefore plaintiff claims breach of

    agreement and claims items 1 to 6 are not part of the agreement. Defendants refused to show

    the original agreement. Plaintiff claims the copy could be forged because it leaves out items 1

    to 6. Plaintiff is left with the belief that it is "FRAUD IN THE FACTUM", for the Defendants

**COMPLAINT**

to even attempt to claim that the items 1 to 6 are concealed; and if their argument is that the items were left out, then the document would have to be a forged document. Defendants must show the original note if they claim the above items are not part of the agreement, if they only have a copy, then it is the Plaintiff's claim that the additional part of the agreement is missing with items 1-6. The agreement allows the Plaintiff to repay the alleged loan with a promissory note even though the Defendants stated that the contract demands payment in Federal Reserve notes, therefore proving that the Defendants are nothing but Moneychangers. We ask that the Defendants explain the agreement, the GAAP and who funded the loan. Plaintiff wants to know who funded the alleged loan/debt as it changes the cost and risk of the alleged loan/debt as stealing and counterfeiting is still a criminal offense and there is no statute of limitation on fraud.

**13.** Plaintiff believes that at all times material hereto, Defendants agreed, between and among themselves and in combination with each other and various agents identified hereinbelow, as to each overt act in furtherance of the conspiracy and enterprise, to engage in unlawful actions for a common purpose, to wit: to perpetrate a fraud upon Plaintiff by placing her alleged loan into a security trust. Plaintiff also feels that Defendants tried to extort currency through fraudulent verbal threats of default and fraudulent written threats via mail fraud and wire fraud of default filings whereby the Defendants would punish the ENS LEGIS TRUST, KARLA D SELDON, under fraudulent pretenses, of the Plaintiff's real property, her home at the expense of the Plaintiff and without compensating the Plaintiff therefore; to unlawfully convert the Plaintiff's real property via a lien threat, and the good name of the ENS LEGIS' KARLA D SELDON and permanently depriving the Plaintiff thereof; to force Plaintiff to pay currency without proof of loan/debt in "Fiat notes/federal reserve notes."

## COUNT IV: VIOLATIONS OF (OHIO CORRUPT PRACTICES ACT ("OCPA"), R.C. 2923.31, ET SEQ.)

**14.** Plaintiff reaffirms paragraphs 5 through 13 hereinabove as if set forth more fully hereinbelow. **15.** This is an action for violations of the OHIO CORRUPT PRACTICES ACT ("OCPA"), R.C. 2923.31, ET SEQ.), also known as the Organized Crime Control Act of 1970," 84 Stat. 941, 18 U.S.C. 1961(1)(B), (1)(C), (1)(D), and (1)(E), as amended and Plaintiff asserts claims for relief under 18 U.S.C. §§ 1962(c)-(d), and 1964(c). 18 U.S.C. § 1962 which

1  provides, in pertinent part: (c) It shall be unlawful for any person employed by or associated

2  with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce,

3  to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs

4  through a pattern of racketeering activity or collection of **unlawful debt**. (d) It shall be

5  unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c)

6  of this section. 18 U.S.C. § 1926. Section 1964(c) of RICO gives individuals a private right of

7  action with recourse to treble damages and reasonable attorney fees. In order to demonstrate a

8  violation under RICO, a plaintiff must establish the following elements: 1) that there were two

9  or more predicate offenses; 2) that an "enterprise" existed (Section 1962(c) of the Racketeer

10  Influenced and Corrupt Organizations Act provides that "it shall be unlawful for any person

11  employed by or associated with any *enterprise. . .* to conduct . . . such enterprise's affairs

12  through a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c) (1999) (emphasis added)).;

13  3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4)

14  that an injury to business or property occurred as a result of the above three factors.

15  " VanDenBroeck v. Commonpoint Mortgage Co., 210 F.3d 696, 699 (6th Cir. 2000). Further,

16  the United States Supreme Court has held that "in order to be held responsible under the Act, a

17  defendant must have not only participated in the **scheme**, but must have also participated in the

18  operation or management of the enterprise itself." Id. (citing Reves v. Ernst & Young, 507 U.S.

19  170, 183 (1993)). The plaintiff is informed and believes that she has met at least one of the

20  RICO requirements (1) the predicate act of "racketeering activity"; (2) a "pattern of

21  racketeering activity" and (3) a violation of one or more of the four RICO subsections. 18

22  U.S.C. § 1962(a)-(d)   A "pattern of racketeering" activity is defined to require "at least two

23  acts of racketeering activity, one of which occurred after the effective date of this chapter and

24  the last of which occurred within ten years ... after the commission of a prior act of racketeering

25  activity." 18 U.S.C. § 1961(5). "Racketeering activity" is defined as section 1341 (relating to

26  mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of

27  justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating

28  to obstruction of State or local law enforcement), section 1951 (relating to interference with

commerce, robbery, or extortion), section 1952 (relating to racketeering).

**16.** Plaintiff is informed and believes that in order to accomplish their objective, Defendants

developed and were part of an enterprise, which consisted of the Defendants and their agents

**COMPLAINT**

including but not limited to various law Firms and "Trustee Sale" companies, which worked together and in concert at the direction of the Defendants for the specific purpose of furthering the pattern of criminal activity set forth herein. One example of their RICO activities includes the following: "The Department of Justice on May 14, 2013 announced the federal government's first lawsuit filed against owners and servicers of student loans for violating the rights of service members eligible for benefits and protections under the Service members Civil Relief Act (SCRA). The United States' complaint alleges that three defendants, collectively known as Sallie Mae, engaged in a nationwide pattern or practice, dating as far back as 2005, of violating the SCRA by failing to provide members of the military the six percent interest rate cap to which they were entitled. The three defendants are Sallie Mae Inc. (now known as Navient Solutions Inc.), violations of the Robocalls, autodialers, and the federal Telephone Consumer Protection Act: 1) placing debt-collection calls without an individual's consent, 2) using autodialers, and 3) placing robo-calls each call that violates these restrictions potentially subjects the company or individual that is responsible for the call to a $1,500 fine (see Exhibits Exhibit 4A-4E & Exhibit J). Plaintiff received these robo-calls and autodialer calls and ignored the cease and desist letter and verbal warning (see Exhibit H). **17.** Plaintiff is informed and believes that an association-in-fact enterprise under RICO can be proven by showing (1) that the associated persons formed an ongoing organization, formal or informal; (2) that they functioned as a continuing unit; and 3) that the organization was separate from the pattern of racketeering activity in which it engaged. VanDenBroeck, 210 F.3d at 699 (citing Frank v. D'Ambrosi, 4 F.3d 1378, 1386 (6th Cir. 1993). There is "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle vs. United States. There must be "an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than ad hoc, basis." United States v. Tocco, 200 F.3d 401, 425 (6th Cir. 2000). Defendants didn't simply conspire to commit a fraud they are an organized functioning racketeering organization that committed telecommunication fraud under Title 29 Ch. 2913 § 2913.05 (A)(B)(C) when they committed the following verbal and written threats: Continued phone harassment and there's nothing I can do as quoted by one agent on the phone, robocalls around 7:30 am, threats to and did ruin/crush credit with all three credit bureau before any default occurred, threatened to sue in court without qualifying the debt, threatening to garnish

16

**COMPLAINT**

1    wages, threatened to keep income tax returns, threatened to Levy bank account, and threatened

2    to lien private allodial property among other violations which was an attempt to extort Federal

3    Reserve Notes without qualifying proof of debt.

## COUNT VI: <u>RECISSION</u>

**18.** Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

**19.** Plaintiff is entitled to rescind the loan and all accompanying loan documents for all of the foregoing reasons: 1) Default of Estoppel by Acquiescence; 2) Failure to provide a Promissory Note/Contract Loan Origination Agreement upon request; 3) Fraudulent Concealment; 4) Fraudulent Inducement; 5) Failure to abide by the PSA; 6) making illegal or fraudulent transfers of the note; and 7) Public Policy Grounds, each of which provides independent grounds for relief. 8) Attempt to Defraud - violation of the (HEOA) the Higher Education Act (HEA) that reauthorized and established new institution-based disclosure requirements • HEOA amended Truth in Lending Act (TILA) and established private education loan disclosures • HEOA amended both HEA and TILA to prohibit certain education lending practices ; 8) Fraud in Factum; 9) RICO. (see Exhibit I).

**20.** The Truth In Lending Act, 15 U.S.C §1601, et. seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Borrower's right to rescind. Here, Defendants have failed to properly disclose all the details of the alleged loan. Specifically, the initial disclosures do not initial TILA disclosures, and lack of diligence and may show collusion on the part of the broker, lender and underwriter to place Plaintiff in a loan she could not afford due to hidden mounting interest cost, changing a loan into a security and would ultimately benefit Defendants following the negative amortization that accrued.

**21.** As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

**COMPLAINT**

1 | Recoupment to Plaintiff is requested under the GAAP and Generally Accepted Auditing

2 | Standards (GAAS) and the FASB Regulations: FAS125 Securitization Accounting; FAS140

3 | Offsetting of Financial Assets and Liabilities; FAS133 Derivatives on hedge accounts and

4 | FAS95. **22.** Affidavit of Fact -Notice of Default Judgment due to Acquiescence.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all matters so triable as a matter of right pursuant to OCPA. R.C. 2923.31 and Organized Crime Control Act of 1970," 84 Stat. 941, 18 U.S.C. 1961(1) (B), (1)(C), (1)(D), and (1)(E). Dated this 27th day of February, 2016. Please direct all responses to this Complaint to the Allodial Estate, Moorish Aboriginal Indigenous Trust address below. c/o Jamila Yasmine Bey, via 2620 Stocker Avenue. Youngstown Territory, Ohio Republic Zip Exempt [44505] Tel: (330) 259-6050 (number not to be used by Defendants to continue to harass any longer, in anyway).

Dated: 3/18/16

Jamila Yasmine Bey, Responsible Party for

ENS LEGIS: SELDON, KARLA D.

_Jamila Yasmine Bey_

Plaintiff In Propria Persona Sui Juris

**U.C.C.1-207/1-308;U.C.C 1-103.6 All Rights Reserved**

18

**COMPLAINT**